## HORLOCKER v SAUNDERS et

Ohio Appeals, 2nd Dist, Franklin Co

No 2910. Decided Sept 21, 1938

Ralph H. Henny, Columbus, for plaintiff-appellee.

Roscoe R. Walcutt, Columbus, for defendants-appellants.

## OPINION

By GEIGER, J.

This cause has its inception in a petition against the appellant brought by the administrator of the estate of S. J. Moloney, deceased, wherein it was sought to recover from the appellant, Parker S. Saunders, and Laura Saunders, his wife, certain securities formerly belonging to S. J. Moloney, which plaintiff claimed as administrator of his estate, but which defendants asserted had been given to Laura Saunders by the decedent prior to his death as a gift causa mortis. In the trial a jury was waived and the court determined the issue in favor of the.plaintiff and ordered the property delivered to the administrator.

The matter to be determined by this court is whether or not the circumstances surrounding the alleged transaction and the action of the decedent constituted a valid gift cause mortis.

The alleged donor and donee had been intimate friends for many years, the deceased wife of the donor having been the sister of Mrs. Saunders, the donee. The two families lived in harmony for years in the same building, sometimes living together as one family and at other times living as two friendly families in the same apartment house. After the death of Mr. Moloney's wife in 1927 and until the day of his death he lived with Mr. and Mrs. Saunders as a member of their 1amily. He had no relatives of whom he had any knowledge. The securities in question had been the property of his deceased wife, the sister of the donee.

The decedent died on Wednesday morning, February 1st, 1933, at one o'clock. On the prior Monday morning he was taken seriously ill and undoubtedly was then in peril cf death or under apprehension of death from an existing malady from which he died.

Mrs. Saunders was the very natural object of his bounty and a gift to her of his property was most appropriate. The question for our determination is whether or not this gift was consummated before his death. The securities spoken of were in the lock box in the name of the decedent at the Huntington National Bank. On Tuesday morning before his death, a Mr. Hennick, an old friend of many years standing, was present at the house as a solicitous and interested caller. The decedent then was suffering from his illness but was of sound mind. At that time the decedent expressed a wish that Mr. Saunders and Mr. Hennick go to the bank and get the securities. He did not say why he wanted them. Mr. Hennick then prepared an order on the bank requesting the bank to let Mr. Saunders have access to his box. This order was taken to the bedside by Mr. Saunders and signed by Mr. Moloney. Mrs. Saunders at the request of the decedent secured the key for the lock box from his trousers pocket under instruction that she give the key to Mr. Saunders and have Him go down with Mr. Hennick and get the contents of the box, and stated at that time, "if anything happens to me you are to have the contents of that box." He did not at the time say why he wanted the contents of the box. The securities were then obtained by Mr. Saunders, accompanied by Mr. Hennick. After Mr. Saunders secured the contents of the box, he took them to his office

and put them in his own safe without returning them to Mr. Moloney. Afterwards Mr. Saunders placed them in his own lock box at the bank. Mr. Saunders states that after Mr. Hennick had prepared the order he spoke to Mr. Moloney, stating that he had an order Hennick had written for the securities and offered him a pen and ink. Mr. Moloney said, "all right". He read the order and signed it. He lived less than a day after the delivery of the order. In addition to the securities Mr. Moloney had a bank account of which he told Mr. Saunders, requesting him to get his check book which Mr. Saunders did, and Mr. Moloney on Monday afternooon signed four checks in blank giving Mr. Saunders his bank book and telling him to draw from the Huntington National Bank what money he had and keep it—put it away. This money in the sum of $900.00 was drawn from the bank by Mr. Saunders and apparently is not now in question. Since the death of Mr. Moloney the administrator has not been able to find any of his relatives. In addition to the conversations held immediately before his death, Mr. Moloney had a conversation with Mr. Hennick a year before, in which he stated that he "wanted Laura and Parker Saunders to have what he had when he was through." This is substantially all the evidence touching the desire of the decedent to make a gift.

### THE LAW

It will serve no good purpose to go into extensive analysis of the law touching gifts **inter vivos** and **causa mortis** but we may state briefly a few principles. ▆▆▆▆▆▆ ▆ To constitute a gift **causa mortis** the thing given must have been the donor's, given when he is in peril of death or under apprehension of death from an existing malady and possession must be delivered to the donee or someone for his use with intention to vest title. As to gifts **causa mortis** and **inter vivos** there is no difference in the character of the delivery and an attempted gift which does not vest the donee with present title is ineffectual in either event. An essential element is that the title shall immediately vest in the donee. The ▆▆▆▆▆▆ ▆ policy of our law does not favor gifts **causa mortis**. As an essential to a valid gift the delivery of the subject matter must occur with the relinquishment of ownership by the donor.

The articles in question in this case, being corporate stock, may be subject to gifts without assignment or endorsement, ▆▆▆▆▆▆ ▆ but to make effective gifts of such objects there must be an intention to give and delivery. To support such a gift clear and convincing evidence is required. Acceptance by the donee of a gift will be presumed and this presumption prevails where the gift is delivered to a third person. A completed gift is created where the evidence shows delivery of the property to a third person under circumstances manifesting an intention to vest immediate title in the donee and relinquishment of all control over the property.

"Where a delivery is thus made to a third person the question whether the gift was thereby completed without actual delivery to the donee depends entirely upon whether the person to whom the property is delivered receives it as the donor's agent or as the trustee for the donee. And this is to be determined from the intention of the donor. * * *"

The expression, "if anything happens to me" used by donors has generally been interpreted as synonymous with "upon my death".

Sustaining these principles, see **Gano v Fiske, 43 Oh St 462; Flanders v Blandy, 45 Oh St 108; Van Pelt, Exr. v King et, 22 Oh Ap 295; Bolles et v Trust Co., 132 Oh St 21; Streeper, Admr. v Myers, 132 Oh St 322;** and the unreported case of Myers v Streeper, opinion by Barnes, P.J., of this court, 1936, p. 454. This latter citation is the original opinion of the case reported in **132 Oh St 322,** and is a much more thoroughly considered opinion than that of the Supreme Court.

### THE FACTS

As always in cases such as this the difficulty arises on the application of the facts to the legal principle. In the case at bar, the decedent in sending his friend Saunders to the bank to obtain the securities did not constitute him the ▆▆▆▆▆▆ ▆ agent of the donee, but made him his own agent. The fact that Mr. Saunders did not return the securities to Mr. Moloney, probably due to his extreme sickness, did not constitute Mr. Saunders the agent of his wife or the trustee for her. Mr. Moloney still retained his dominion over the securities even though he delivered the key to Mr. Saunders with instructions to obtain the contents of the box. His statement to Mrs. Saun-

ders, the donee, "now, I want you to have Parker go over to the lock box and get the contents; if anything happens to me you are to have the contents of the box", does not support the claim that Mr. Moloney thereby relinquished control over the securities and placed them in the possession of Mr. Saunders as trustee for his wife, and is not in our judgment sufficient to support a gift *causa mortis*. It is unfortunate that Mr. Moloney did not carry out his evident intention of making Mrs. Saunders an object of his bounty by preparing a will to that effect. But we, as a court, cannot do that which Mr. Moloney himself failed to do, merely because it seems to be a happy solution to the distribution of this estate.

Judgment of the court below affirmed.

BARNES, PJ, and HORNBECK, J, concur.