OPINION
{¶ 1} Defendant-appellant, Raymond Eggeman (hereinafter "Raymond") appeals the judgment of the Auglaize County Court of Common Pleas granting Raymond a divorce from Judith Eggeman (hereinafter "Judith") and dividing the parties' property.
 {¶ 2} Raymond and Judith were married on December 10, 1992. On April 14, 2003, after approximately ten years of marriage, Judith filed a complaint for divorce in the Auglaize County Court of Common Pleas. A hearing on the matter was held on November 10, 2003.
 {¶ 3} On January 21, 2004, the trial court entered judgment granting Raymond and Judith a divorce and making a distribution of their marital property. Specifically, the trial court found that the parties owned two parcels of real estate as marital property: the marital home in St. Marys, Ohio and a rental property in Delphos, Ohio. The trial court awarded the marital home to Judith and the rental property to Raymond. However, the trial court ordered Raymond to pay Judith $39,020.94, an amount representing a previous contribution by Judith to the payoff of the mortgage on the Delphos property.
 {¶ 4} In addition, the trial court found that Raymond had committed financial misconduct with regard to the Delphos property, noting that Raymond had been convicted of aggravated arson and insurance fraud for setting fire to the Delphos property. Based upon Raymond's financial misconduct, the court determined that Raymond had diminished the value of the Delphos property by $35,000. The trial court, therefore, awarded Judith the insurance proceeds from the claim for fire damage at the Delphos property in the amount of $32,837.12.
 {¶ 5} The trial court divided the rest of the parties' marital property and determined other property to be separate property not subject to division. Pertinent to this appeal, the trial court found that a savings account with a balance of approximately $18,000 was Judith's separate property, finding that she earned the money after the parties separated. In total, the trial court's division of property resulted in Judith's assets totaling $156,658.06 and Raymond's assets totaling $123,820.93, a difference of $32,837.13 — the amount of the fire insurance proceeds.
 {¶ 6} It is from this decision that Raymond appeals, setting forth five assignments of error for our review.
 ASSIGNMENT OF ERROR NO. I The trial court erred and abused its discretion by concludingthat the date of the de facto termination of the marriage was thedate of the filing of the divorce against the manifest weight ofthe evidence.
 {¶ 7} In its judgment entry, the trial court determined that the de facto termination date of the marriage was April 14, 2003, the date the complaint for divorce was filed, rather than November 10, 2003, the date of the final hearing. Raymond argues that the trial court erred in choosing the filing date, as R.C.3105.171 (A)(2)(b) requires the date of the final hearing be used as the de facto date unless the court finds the date to be inequitable. Raymond contends that the trial court herein made no such finding and, therefore, erred in choosing April 14, 2003 as the de facto termination date.
 {¶ 8} R.C. § 3105.171 (2) provides in pertinent part:
"During the marriage" means whichever of the following isapplicable:
 (a) Except as provided in division (A)(2)(b) of this section,the period of time from the date of the marriage through the dateof the final hearing in an action for divorce or in an action forlegal separation;
 (b) If the court determines that the use of either or both ofthe dates specified in division (A)(2)(a) of this section wouldbe inequitable, the court may select dates that it considersequitable in determining marital property. If the court selectsdates that it considers equitable in determining maritalproperty, "during the marriage" means the period of time betweenthose dates selected and specified by the court.
 {¶ 9} A trial court possesses broad discretion in choosing the appropriate termination of marriage date for the purposes of valuing property. Berish v. Berish (1982), 69 Ohio St.2d 318,319. Thus, the termination of marriage date will not be disturbed absent an abuse of discretion. Id. An abuse of discretion is more than an error of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Masters v.Masters, 69 Ohio St.3d 83, 85, 1994-Ohio-483. When applying this standard, an appellate court is not free to merely substitute its judgment for that of the trial court. Berk v. Matthews (1990),53 Ohio St.3d 161, 169.
 {¶ 10} The duration of the marriage is critical in distinguishing marital, separate and post-separation assets and liabilities, and determining appropriate dates for valuation. SeeBerish v. Berish (1982), 69 Ohio St.2d 318. Trial courts often terminate marriages as of the date of the final hearing. R.C.3105.171(A)(2). Nevertheless, the Ohio Supreme Court has stated that equity may occasionally require the trial court to choose a de facto termination of marriage date. Id. at 320. R.C.3105.171(G) states that the trial court "shall specify the dates it used in determining the meaning of `during the marriage'." The trial court is not statutorily required, by either R.C.3105.171(A)(2)(b) or R.C. 3105.171(G), however, to make a factual finding to support its determination. Thus, we will affirm a court's use of a de facto termination date, even in the absence of an expression of its rationale, if there is any evidence in the record to support it. See Eddy v. Eddy, 4th Dist. No. 01CA20, 2002-Ohio-4345.
 {¶ 11} The record indicates that on April 14, 2003, the time of filing for divorce, Judith had voluntarily removed herself from the marital residence and moved to a new location. Pursuant to the pending order of the trial court filed April 18, 2003, Raymond was in exclusive possession of the marital home and was solely responsible for the mortgage, taxes and insurance on the residence until the time of the final hearing when property rights would be adjudicated. Therefore, at the time the complaint for divorce was filed, Judith and Raymond were living independently, each responsible for their own residences. We find that this fact supports the trial court's determination of April 14, 2003, the date the complaint for divorce was filed, as the de facto termination date of the marriage.
 {¶ 12} Accordingly, Raymond's first assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. II The court erred and abused its discretion in allowing theplaintiff to keep her $18,000.00, $19,000.00 or $24,000.00savings account as separate property against the manifest weightof the evidence.
 {¶ 13} Raymond adopts the arguments in his first assignment of error in support of his second assignment of error. Raymond is asserting, presumably, that if the date of the final hearing were determined to be the de facto termination date, the monies in Judith's savings account would be deemed to have been acquired "during the marriage," as Judith accumulated the funds during the pendency of the divorce action. In the alternative, even if the termination date of the marriage is the time of filing, Raymond contends that the savings account should, nonetheless, be classified as marital property, because he paid all of the bills associated with the marital home, which allowed Judith to save $18,000 in the savings account.
 {¶ 14} In determining whether the trial court has appropriately categorized property as separate or marital, the standard of review is whether the classification is against the manifest weight of the evidence. Henderson v. Henderson, 3d Dist. No. 10-01-17, 2002-Ohio-2720, ¶ 28. A judgment of a trial court will not be reversed as being against the manifest weight of the evidence if the trial court's judgment is supported by some competent, credible evidence. DeWitt v. DeWitt, 3d Dist. No. 9-02-42, 2003-Ohio-851, ¶ 10.
 {¶ 15} Based on our finding that the trial court's determination that the de facto termination date of the marriage was not in error, we cannot find that the funds in the savings account were acquired "during the marriage" of the parties. Accordingly, Raymond's first assertion is without merit. As to Raymond's alternative assertion, although he shouldered the financial responsibilities of the marital home while the divorce was pending, that fact is not dispositive of the classification of the savings account as Judith's separate property. Raymond had been awarded exclusive possession of the marital home and had the benefit of residing there. At the same time, Judith was maintaining her own residence and incurring her own, separate expenses, as well as saving $18,000. We, therefore, find that competent, credible evidence exists to support the trial court's determination that the funds in the savings account are Judith's separate property.
 {¶ 16} Raymond's second assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. III The trial court erred and abused its discretion in concludingthat the defendant was guilty of financial misconduct against themanifest weight of the evidence.
 {¶ 17} Raymond asserts that the trial court erred in finding he had engaged in financial misconduct in relation to the Delphos rental property. Raymond claims that Judith bore the burden of establishing his financial misconduct and she did not meet this burden. Raymond argues that no judgment entry of conviction was offered into evidence and no witnesses were brought forth to testify that Raymond set fire to the Delphos property. Therefore, he contends the finding of financial misconduct by the trial court was against the manifest weight of the evidence.
 {¶ 18} Financial misconduct includes, but is not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets. R.C. 3105.171(E)(3). If the trial court determines one spouse has engaged in financial misconduct, the court may compensate the other spouse with a distributive award or with a greater award of the marital property. Id.
 {¶ 19} A trial court has discretion to determine whether a spouse has engaged in financial misconduct. See Huener v.Huener (1996), 110 Ohio App.3d 322, 326. As previously stated, the decision of a trial court will not be reversed as being against the manifest weight of the evidence if the trial court's judgment is supported by some competent, credible evidence.DeWitt v. DeWitt, 3d Dist. No. 9-02-42, 2003-Ohio-851, ¶ 10. It is necessary to keep in mind that a trial court is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections in order to assess their credibility and weigh the testimony. State ex rel. Pizza v.Strope (1990), 54 Ohio St.3d 41, 45-46, citing Seasons CoalCo. v. Cleveland (1984), 10 Ohio St.3d 77. Accordingly, a reviewing court must defer matters of witness credibility to the trier of fact. Babka v. Babka (1992), 83 Ohio App.3d 428, 436.
 {¶ 20} In the case sub judice, the trial court found that Raymond committed financial misconduct due to the arson and insurance fraud on the Delphos property and that his wrongdoing diminished the value of the property by $35,000. The most compelling evidence was an admission by Raymond himself. At the final hearing, under oath, Raymond testified that he had been convicted of arson and insurance fraud relating to the Delphos property. Accordingly, there is competent, credible evidence in the record to support the trial court's conclusion that Raymond engaged in financial misconduct.
 {¶ 21} Raymond's third assignment of error is, therefore, overruled.
 ASSIGNMENT OF ERROR NO. IV The court erred and abused its discretion in awarding adistributive share when, in fact, even if its finding that thedefendant was guilty of financial misconduct is appropriate, saidmisconduct in no way caused a diminution of the marital estate.
 {¶ 22} In this assignment of error, Raymond argues that even if the court did not err in determining that he engaged in financial misconduct, his misconduct did not diminish the value of the Delphos property. The Delphos property consists of a duplex and a triplex and it is undisputed that, prior to the fire, the fair market value of the property was $180,000. The fire partially destroyed the duplex and caused it to no longer be habitable. As a result, the Delphos property's appraised value declined to $145,000. Raymond contends that the insurance proceeds in the amount of $35,000 make up for the diminished value of the property. He, therefore, asserts that because there is no evidence of actual damage to the property, there is no basis for the trial court to award the $35,000 in insurance proceeds to Judith as compensation for his alleged financial misconduct.
 {¶ 23} A trial court's decision to compensate a spouse for the financial misconduct of the other spouse is reviewed under an abuse of discretion standard. Thill v. Thill, 2d Dist. No. 2001-CA-23, 2001-Ohio-1490. An abuse of discretion implies that the court's attitude is "unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 24} The financial misconduct statute should apply only if the spouse engaged in some type of "wrongdoing." Hammond v.Brown (Sep. 14, 1995), 8th Dist. No. 67268. Pursuant to R.C.3105.171(E)(3), once the trial court determines one spouse has engaged in financial misconduct, the court "may compensate the other spouse with * * * a greater award of the marital property." Before a compensating award is made, however, there must be a clear showing that the offending spouse either profited from the alleged misconduct or intentionally defeated the other spouse's distribution of assets. Wideman v. Wideman, 6th Dist. No. WD-02-30, 2003-Ohio-1858, ¶ 34; Detlef v. Detlef (Dec. 14, 2001), 6th Dist. No. L-00-1137.
 {¶ 25} On the record before us, we cannot find that Raymond personally gained or profited from his misconduct. Neither was Judith's interest in the rental property defeated. Although the arson resulted in a diminished value of the rental property, the insurance proceeds compensate for that loss, as Raymond argues. The award to Judith of the entirety of the insurance proceeds, therefore, appears punitive to Raymond. In fact, the trial court stated in its judgment entry that "[t]he Defendant must not be financially rewarded for his misconduct."
 {¶ 26} We find that the purpose of R.C. 3105.171(E)(3) is to neutralize losses caused by the offending spouse's conduct and not to simply reward one spouse for the other's wrongdoing when no loss in value has occurred. After reviewing the record, we are unable to find sound reasoning for the trial court's award of the insurance proceeds to Judith. Even in light of Raymond's financial misconduct, the trial court's action was disproportionate and went far beyond "compensating" Judith. We find the trial court's action unreasonable and, therefore, sustain Raymond's fourth assignment of error.
 ASSIGNMENT OF ERROR NO. V The court erred and abused its discretion in finding thedefendant's separate property (Delphos Apartments) had becomemarital property against the manifest weight of the evidence.
 {¶ 27} The trial court's determination of whether property is marital or separate property will not be overturned unless it is against the manifest weight of the evidence. Kerchenfaut v.Kerchenfaut, 3d Dist. No. 1-01-14, 2001-Ohio-2259. An appellate court will not reweigh the evidence introduced at trial; rather, we will uphold the findings of the trial court if the record contains some competent, credible evidence to support the trial court's conclusions. Id.
 {¶ 28} Raymond contends within this assignment of error that the trial court erred in finding the Delphos apartments had become marital property. Raymond purchased the Delphos property in 1978, approximately fourteen years before his marriage to Judith. However, after his marriage to Judith, the property was retitled in the names of both parties and Judith expended personal funds toward payment of the mortgage on the property. Nonetheless, Raymond contends that the character of the Delphos property did not change and it remains his separate property.
 {¶ 29} Pursuant to R.C. 3105.171(A)(6)(a)(ii), separate property includes any real or personal property or interest in property that was acquired by one spouse prior to the date of the marriage. It is clear, therefore, that the Delphos property was Raymond's separate property prior to the marriage. We must then determine whether the real property acquired prior to Raymond's marriage to Judith was converted to marital property. One way separate property is converted to marital property is for one spouse to grant the other an interest. Helton v. Helton (1996),114 Ohio App.3d 683, 685. In those circumstances, the key issue is donative intent. Id.
 {¶ 30} In Ohio, the requisites of a valid inter vivos gift are an intention on the part of the donor to make an immediate gift of property, delivery of the property to the donee, and acceptance of the gift by the donee. Bolles v. Toledo Trust Co.
(1936), 132 Ohio St. 21. If any of the elements are absent, the gift fails. Id. The donee has the burden of showing by clear and convincing evidence that the donor made an inter vivos gift.Helton v. Helton (1996), 114 Ohio App.3d 683, 686.
 {¶ 31} A review of the record indicates that Raymond bought the Delphos property in 1978 for $27,500. When the property was purchased, only the duplex existed on the property. In 1991, Raymond borrowed approximately $70,000 to construct the triplex. Construction on the triplex was completed in 1992, the same year the parties were married. In 1993, the Delphos property was refinanced for $82,000 and a mortgage and note were executed. In 1997, Judith sold stocks that she owned prior to the marriage, in the amount of $36,294.84 to help pay off the mortgage. The remaining balance of the mortgage was paid using marital funds.
 {¶ 32} In 1999, title to the property was changed to be held jointly with right of survivorship by Raymond and Judith. Unlike a situation where a deed is executed in order to obtain a mortgage or refinancing,[1] the deed that was executed in 1999 was so that, according to Raymond, the Delphos property would be Judith's property and she would be entitled to it if something happened to him. Further, the deed states that the grant of the property is to Raymond and Judith "for their joint lives, remainder to the survivor of them."
 {¶ 33} Based on the preceding, we find that competent, credible evidence exists to support the trial court's finding that Raymond had the requisite donative intent to convert the Delphos property to marital property. Therefore, we find that the trial court did not err in classifying the Delphos property as a marital asset.
 {¶ 34} Accordingly, Raymond's fifth assignment of error is overruled.
 {¶ 35} Having found error prejudicial to appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
 ROGERS, J., concurs.
 SHAW, P.J., concurs in part and dissents in part.
[1] See Schell v. Schell (June 16, 1992), 2d Dist. No. CA 2876 (holding that the property was separate where there was no donative intent because the deed was executed in order to obtain a mortgage); Geuy v. Geuy (May 1, 1998), 2d Dist. No. 97-CA-22 (holding that the property was separate property because there was no donative intent as the deed was executed in order to obtain refinancing on the home).