OPINION
{¶ 1} Defendant-appellant, Terrance L. Moser, appeals the decision of the Portage County Court of Common Pleas, Domestic Relations Division, terminating his marriage to plaintiff-appellee, Barbara Moser, and dividing the marital estate. For the following reasons, we affirm the decision of the court below. *Page 2 
 {¶ 2} Terrance and Barbara Moser were married on October 11, 1980, in Hamilton, Ohio. Two children were born of the marriage, Shannon and Joshua, both now emancipated. The parties met while students at Miami University. From 1980 to 1990, Barbara worked at the Northeastern Ohio Universities College of Medicine and Akron City Hospital while Terrance established the Moser Construction Company and other land development businesses. After 1990, it was no longer necessary for Barbara to continue working. Thereafter, Barbara primarily worked as a homemaker, although she was also on the payroll of one of Terrance's business ventures, Rootstown Service.
 {¶ 3} By 1996, the Mosers had accumulated assets in excess of two million dollars. In that year, the Mosers met with John Rasnick, an Akron area attorney, for the purpose of estate planning. Rasnick drafted estate plans for Barbara and Terrance consisting of wills, revocable marriage deduction trusts, and powers of attorney. On May 21, 1996, the Mosers signed the revocable trusts which assigned to their respective trusts all items of personal property owned by them.
 {¶ 4} On December 31, 1996, Terrance and Barbara executed a document creating The Moser Family Limited Partnership. A family limited partnership is an estate planning device designed to minimize tax liabilities. The Moser Family Partnership was set up with Terrance, as trustee of his revocable trust, as General Partner; Barbara, as trustee of her revocable trust, as a limited partner, and Shannon and Joshua as limited partners, with Barbara as their custodian. Typically, a family partnership is funded with assets having a high potential for appreciation. Parents will then gift to their children a certain number of units or a percentage interest in the partnership, without tax liability, taking advantage of the gift tax exclusion. At the time the Moser Family Partnership *Page 3 
was created, the annual gift tax exclusion was $10,000. In order to function properly as an estate planning device, the gifts of partnership interest to the children had to be completed, irrevocable gifts. In this way, wealth can be transferred to children during the parents' lifetime, thus avoiding estate taxes, while the parents are able to maintain a certain amount of control of the wealth, by virtue of the general partner's control of the partnership. The Moser Family Partnership, in conjunction with Moser Construction and other business entities, successfully oversaw several land development ventures.
 {¶ 5} On January 17, 2003, Barbara filed a complaint for divorce in the Portage County Court of Common Pleas. In addition to naming Terrance as a defendant, the complaint named Moser Construction, Inc.; Sandy Lake Properties, LLC; Foam Tech, Inc.; Rootstown Storage; Rootstown Service; Clover Pointe Land Development Ltd.; Comsot Properties Ltd.; SM Title Co.; Moser Family Electing Small Business Trust; Moser Family Limited Partnership; Terrance L. Moser Family Trust; Wachovia Securities; Bank One Securities Corporation; and Portage Community Bank. Clover Pointe II, Ltd., and Clover Pointe III, Ltd., were subsequently added as additional party defendants.
 {¶ 6} On March 19, 2003, Terrrance filed a Motion in Limine and/or Motion to Determine that Assets in Moser Family Limited Partnership are Non-Marital. Hearings were held on Terrance's motion between April 2 and May 3, 2004. On December 30, 2004, the trial court denied Terrance's motion, issuing findings of fact and conclusions of law. The court held that it "has jurisdiction over the [Moser Family Limited Partnership] and its partners and the Court may exercise its jurisdiction to order the *Page 4 
general partner to exercise his discretion to modify or terminate the partnership agreement as necessary to effectuate a fair and equitable property division in this case."
 {¶ 7} Between September 19 and 23, 2005, a trial was held on the divorce complaint.
 {¶ 8} On April 26, 2006, the trial court entered judgment granting the parties a divorce and dividing the marital estate. The court determined the total value of the marital estate to be $3,778,764, of which $1,507,663 represented the net value of the Moser Family Partnership.
 {¶ 9} The assets owned by the Moser Family Partnership were itemized as follows:

Cash 4,143
Accounts Receivable 4,064
Note Receivable — Rootstown Industrial Park 153,380
Note Receivable — Clover Pointe III 222,650
Note Receivable — KM Land 206,000
Note Receivable — Maplewood/Duda 53,100
Note Receivable — Steve King 17,401
Note Receivable — Shannon Moser 21,711
Interest in Rootstown Storage (50%) 633,030
Interest in Clover Pointe (50%) 494,199
Interest in Clover Pointe II (50%) -53,116
Interest in Clover Pointe III (50%) -396,997
Interest in Rootstown Industrial Park -24,674
Illiquidity Discount on Investment -97,866
Terracove (100%) 756,193
Ravenna Lots 6,559
Other Current Assets 308
Total Asset Value 2,000,085

 {¶ 10} The Moser Family Partnership's liabilities were determined to be $492,422 and were itemized as follows:
Accounts Payable 11,838
Notes Payable (total) 475,105
 *Page 5 
Other Current Liabilities 5,479

 {¶ 11} The Moser Family Partnership's net value of $1,507,663 thus represents the difference between these assets and liabilities.
 {¶ 12} In the trial court's division of assets, Barbara received the following:
1 Marital Residence Equity $ 169,968
2 Chase IRS #502263112815 3,317
3 CD (Withdrawn) 2,650
4 Bank One Savings 1,243
5 Bank One Securities 25,564
6 Wachovia Account 18,991
7 PERS/STRS 120,582
8 Terracove Assets 435,943
9 KM Land Note Receivable 206,000
10 Rootstown Industrial Note Receivable 153,380
11 2003 Infiniti 135 Sedan 12,415
Total Distribution to Barbara $ 1,150,053

 {¶ 13} Of these assets, Terracove Assets, KM Land Note, and Rootstown Industrial are assets of the Moser Family Partnership.
 {¶ 14} In the trial court's division of assets, Terrance received the following:
 1 Moser Construction Company $ 1,474,000
 2 Comsot Properties, Ltd. 20,000
 3 4367 Clover Drive Residence 553
 4 1100 Shares of Portage Community Bank 46,849
 5 1995 Mercedes Benz 16,905
 6 Fishing Boat 1,000
 7 Power Boat -0-
 8 Husband's Profit Sharing Plan 18,404
 9 Husband's Westfield Life Insurance (CVS) 11,500
 10 Warehouse 95,000
 11 Vacant Lot 45,000
 12 Husband's Social Security Account 186,160
 13 Two 1978 Lincoln Mark Vs 1,000
 14 Residual assets of Moser Family Partnership 712,340
 Total Distribution to Terrance $ 2,628,711
 *Page 6 
 {¶ 15} The trial court then ordered Terrance to pay Barbara the sum of $739,329 to equalize the property division. Thus, each party received $1,889,382 of the marital estate.
 {¶ 16} Terrance timely appeals and raises the following assignments of error.
 {¶ 17} "[1.] The trial court erred by concluding that the MFLP's assets were marital property and then by dividing those partnership assets between the parties to this divorce action, without regard to the partnership agreement and Ohio partnership law, without any provision for the partnership interests that had been gifted to the children, and without extinguishing the wife's interest in the partnership.
 {¶ 18} "[2.] The trial court erred in its division of marital property by failing to consider all of the relevant factors under R.C.3105.171(F), resulting in an inequitable and unlawful division."
 {¶ 19} Terrance raises two arguments under the first assignment of error. The first is that the trial court erred by invalidating the gifts of partnership interest to the Moser children. The second is that the trial court erred by treating partnership assets as marital property.
 {¶ 20} "A trial court's characterization of property as either marital or separate that involves factual questions is reviewed under a manifest weight of the evidence standard." DiNunzio v. DiNunzio, 11th Dist. No. 2005-L-124, 2006-Ohio-3888, at ¶ 63 (citation omitted). A trial court's factual findings are entitled to a presumption of correctness and will not be reversed as being against the manifest weight of the evidence if they are supported by competent, credible evidence. Seasons Coal Co.v. *Page 7 Cleveland (1984), 10 Ohio St.3d 77, 80, citing CE. Morris Co. v. FoleyConstruction Co. (1978), 54 Ohio St.2d 279, at syllabus.
 {¶ 21} The trial court made the following findings relative to the parties' gifts and transfers of partnership assets. The subscription pages of the Moser Family Limited Partnership agreement were left blank at the time the agreement was signed on December 31, 1996. As any initial assets of the Partnership were marital, Terrance and Barbara were deemed to be equal partners, i.e. fifty percent owners of the partnership shares.
 {¶ 22} On December 31, 1997, Attorney Rasnick forwarded to Terrance a series of Memorandum of Gift letters. In three of these letters, Terrance purports to give to Barbara, as custodian for Joshua, as custodian for Shannon, and as trustee of the Barbara Lyn Moser Trust of May 21, 1996, a "number of limited partnership units * * * which is equal in value as of the date of this transfer [December 31, 1997] to $9,900." In two of these letters, Terrance purports to give Barbara, as custodian for Joshua and as custodian for Shannon, "one half of my interest [in JMT Development, Ltd.] which is equal in value as of the date of this transfer to $15,000." These five Gift Memoranda were signed by Terrance and delivered to Rasnick for his files.
 {¶ 23} Also drafted at this time were a series of Memorandum of Gift letters for Barbara. These purport to evidence gifts from Barbara to Barbara, as custodian for Joshua and as custodian for Shannon, of a "number of limited partnership units * * * which is equal in value as of the date of this transfer [December 31, 1997] to $9,900."[1] *Page 8 
Barbara's letters are unsigned and the court found, based on Barbara's testimony, that she never saw any of the Memorandum of Gift letters.
 {¶ 24} In April 2001, six federal gift tax returns, Form 709, were filed, purportedly memorializing gifts made to the Moser children. The first pair of returns memorialized gifts of partnership units totaling 11.9175% of the ownership in the Moser Family Partnership, valued at $9,996, to Shannon and Joshua from Barbara and Terrance on December 31, 1996. Assuming the validity of the gifts, each child would have had a 23.835% interest in the partnership as of December 31, 1996. The second pair of returns memorialized additional gifts of partnership units totaling 11.9175% of the ownership in the Moser Family Partnership, valued at $9,996, to Shannon and Joshua from Barbara and Terrance on January 1, 1997. Assuming the validity of the gifts, each child would have had a 46.67% interest in the partnership as of January 1, 1997.
 {¶ 25} The remaining pair of gift tax returns memorialized gifts of 12.5% ownership interest in JMT Development, Ltd., valued at $7,272, to Shannon and Joshua from Barbara and Terrance on January 1, 2000. Assuming the validity of the gifts, each child would have had 25% interest in JMT Development.
 {¶ 26} The April 2001 gift tax returns were signed by Terrance and Barbara. The Moser Family Partnership tax return and the returns for individual members of the Moser family, Schedule K-1 (Form 1065), reflected the gifts of partnership interests to the children consistent with the gift tax returns. The court determined that Barbara was not aware of the contents of the Partnership returns. The personal returns, which she *Page 9 
did see and sign, did not reveal a specific percentage of ownership in the Moser Family Partnership.
 {¶ 27} The trial court found that transfers of interest in the Moser Family Partnership to the Moser children did not occur on December 31, 1996, and January 1, 1997, as purported in the federal gift tax returns. Leslie D. Smeach is a certified public accountant who did work for Terrrance. Smeach testified that the valuation of the partnership units allegedly gifted to the Moser children on December 31, 1996, and January 1, 1997, did not occur until April 1997. Prior to this valuation, it would have been impossible to determine the number of partnership units that could be gifted in accordance with the gift tax exclusion.
 {¶ 28} The trial court also found that Terrance operated the Moser Family Partnership and its subsidiary companies as his own personal assets. The court noted the free transfer of funds between business entities that were part of, or associated with, the Moser Family Partnership. For example, although the tax returns indicated the Moser Family Partnership possessed a 50% interest in Rootstown Storage Partnership, Terrance continued to list Rootstown Storage as an asset on his personal financial statements.[2] In April 2000, Terrance received a personal distribution of $55,000 from Rootstown Storage. Subsidiary companies, such as Clover Point and Sandy Lake, were initiated using marital funds, such as loans from Moser Construction or loans personally guaranteed by Terrance, although the Moser Family Partnership owned 50% interests in these ventures. At the hearings, Barbara's expert, Mike Zeleznik, opined that these entities were operated as alter egos of Terrance without apparent regard to fiduciary restraints. *Page 10 
 {¶ 29} In conclusion, the trial court determined that Terrance and Barbara had not made valid, inter vivos gifts of their interests in the Moser Family Partnership to the Moser children. In Barbara's case, the court relied upon her testimony that she did not intend to relinquish ownership interest in the Partnership until her death.
 {¶ 30} In Terrance's case, the court found the intent to make such a gift in the Memoranda of Gifts signed by Terrance on December 31, 1997. However, the court also found that there was no delivery of the Memorandum of Gift letters to the Moser children or to Barbara as their custodian. The court also concluded that Terrance had not relinquished control over his ownership interest in the Partnership in a manner consistent with the intent to make a gift. For similar reasons, the court found that Terrance did not make a valid inter vivos gift of his 50% interest in the JMT Partnership.
 {¶ 31} "The essentials of a valid gift inter vivios are (1) an intention on the part of the donor to transfer the title and right of possession of the particular property to the donee then and there and (2), in pursuance of such intention, a delivery by the donor to the donee of the subject-matter of the gift to the extent practicable or possible, considering its nature, with relinguishment of ownership, dominion and control over it." Bolles v. Toledo Trust Co. (1936),132 Ohio St. 21, at paragraph one of the syllabus.
 {¶ 32} Terrance disputes the trial court's conclusions that he and Barbara failed to make valid inter vivos gifts of their partnership interests. Terrance relies on the proposition that delivery of a gift may be made "to a third person as trustee for the donee." Streeper v.Myers (1937), 132 Ohio St. 322, at paragraph one of the syllabus. "A completed gift is created where the evidence in a particular case shows delivery of property by the donor to a third person for the benefit of the donee, under *Page 11 
circumstances manifesting an intention to vest immediate title in the donee and relinquishment of all dominion and control over the property; and the third person is thereby constituted a trustee for the donee." Id. at paragraph three of the syllabus. Moreover, "[t]he validity of such a gift is not affected by the fact that the donee's enjoyment of the property is postponed until the donor's death." Id. at paragraph four of the syllabus.
 {¶ 33} Thus, Terrance maintains that effective delivery of the gifts could have been accomplished by delivery to Rasnick, as the donor's attorney. Proctor v. Chute (Feb. 25, 1994), 4th Dist. No. 93 CA 10, 1994 Ohio App. LEXIS 822, at *15 ("nothing in Streeper prohibits a donor's attorney from also serving as a third party trustee for the donee").
 {¶ 34} The legal principles cited by Terrance are valid. However, the fact that delivery of the partnership interests, in the form of the Memoranda of Gifts, could have been effected by delivery to Rasnick does not mean that this is what, in fact, occurred. "As always, in cases such as this, the difficulty arises on the application of the facts to the legal principle." Horlocker v. Saunders (1938), 59 Ohio App. 548, 551.
 {¶ 35} This truth is demonstrated by several of the cases cited by Terrance. In Lauerman v. Destocki, (1993), 87 Ohio App.3d 657, the court noted that "[d]elivery may be completed through an agent of the donee even where the donee is without knowledge of the gift." Id. at 665 (citation omitted). In Lauerman, the decedent had signed "certain stock certificates" purporting to transfer his interest in a company to employees of the company. Id. at 659. The decedent died shortly thereafter. Id. at 660. The trial court found that, although the decedent had left the certificates with his *Page 12 
attorney for "safekeeping," he never completed the delivery of the certificates. Id. at 667. After noting that it was not permitted to "re-weigh the evidence," the court of appeals affirmed, noting that the decedent did not relinquish control over the certificates in that he never gave instructions to his attorney to deliver them to the donees. Id. at 666-667; Horlocker, 59 Ohio App. at 551 (finding a failure of delivery: "the decedent, in sending his friend * * * to the bank to obtain the securities, did not constitute him the agent of the donee").
 {¶ 36} In the present case, all five of the Memorandum of Gift letters signed by Terrance provided for gifts to Barbara, alternatively in her capacity as custodian of Shannon, as custodian of Joshua, and as trustee of her own revocable marriage trust. Rather than delivering these Memoranda to Barbara, they were given to Rasnick. Arguably, Rasnick could have served as agent for Barbara or the children. But this is quintessentially a factual determination, complicated in the present circumstances by the fact that Barbara's corresponding Memoranda of Gifts were neither signed nor seen by her. As in the cases cited, we must defer to the trial court's determination. Also Ardrey v.Ardrey, 3rd Dist. No. 14-03-41, 2004-Ohio-2471, at ¶ 17 ("resolution of the issue upon review [, i.e. whether a party intended an inter vivos gift,] comes down to a question of witness credibility").
 {¶ 37} With respect to Barbara's donative intent, Terrance argues that she should be estopped from claiming she did not intend to make gifts of Moser Family Partnership interests because she signed gift tax returns memorializing those gifts. Again, we are faced with conflicting evidence regarding Barbara's intent. The fact that Barbara signed the gift tax returns is no more solely determinative of the issue of her intent than is the *Page 13 
fact that Terrance continued to list Moser Family Partnership assets on his personal financial statements.
 {¶ 38} This court's decision in Humphrey v. Humphrey, 11th Dist. No. 2000-A-0092, 2002-Ohio-3121, is illustrative of this point. The husband, in Humphrey, owned an insurance agency which he purported to have acquired as a gift from his mother and which he thus claimed as separate property. Id. at ¶ 15. The trial court held otherwise and the court of appeals affirmed. Id. at ¶ 28. In so holding, the court considered the gift tax return filed by the mother. The court noted that this return was filed twelve years after the purported gift and was inconsistent with the circumstances surrounding the transfer of the mother's interest in the agency. Id. at ¶ 27. Similarly in the present case, the gift tax returns were filed several years after the purported gifts. Also, the gift tax returns are at variance with other documents, such as the Memorandum of Gift letters. As the trial court noted, the valuations of the interests purportedly transferred on December 31, 1996, and January 1, 1997, did not take place until after the making of the gifts. While Terrance argues that it is not uncommon to determine value until after a transfer, the basis for these valuations was properties, Terracove and Rootstown Storage, which had not yet been transferred into the Partnership. The evidence regarding whether the gift tax returns reflect actual transfers is thus disputed.
 {¶ 39} The determinative consideration in the present case is that the trial court's conclusions regarding the donative intent of the parties and validity of the gifts are supported by some competent and credible evidence. Accordingly, those conclusions will not be disturbed. *Page 14 
 {¶ 40} Terrance raises a second argument under the first assignment of error. Terrance asserts that, even if parties failed to effect valid gifts, the trial court erred by dividing Partnership assets between Terrance and Barbara. According to Terrance, a trial court in a divorce proceeding may only divide a spouse's interest in a partnership, not specific assets belonging to the partnership. Except for dividing only the parties' interest in the partnership, the trial court's only option was to order the dissolution of the Partnership in accordance with Ohio partnership law and the terms of the Moser Family Partnership, liquidate the assets, pay off liabilities, and divide the remaining assets.
 {¶ 41} Terrance relies on Robinson v. Robinson (Oct. 14, 1994), 6th Dist. No. L-94-095, 1994 Ohio App. LEXIS 4602, wherein the court stated: "[A] partner's interest in particular partnership property is that of a tenant in partnership and he or she may possess property only for partnership purposes. R.C. 1775.24. As a result, in a divorce proceeding a court cannot make an award of specific partnership property." Id. at *8; also, Gest v. Gest (Nov. 15, 2000), 9th Dist. Nos. 99CA007317 and 99CA007331, 2000 Ohio App. LEXIS 5274, at *7.
 {¶ 42} We find these cases distinguishable in that they involved interests in partnerships involving third persons and/or non-marital partnership interests. Robinson, 1994 Ohio App. LEXIS 4602, at *2;Gest, 2000 Ohio App. LEXIS 5274, at *7. In the present case, the only partners having an interest in partnership property are Terrance and Barbara, the parties to divorce. Moreover, the property at issue was marital before its transference into the partnership. Cf. Sedivy v.Sedivy, 11th Dist. Nos. 2006-G-2687 and 2006-G-2702, 2007-Ohio-2313, at ¶ 44-46 (finding that husband's business was created and supported with marital assets); Murph v. Murph, 2nd Dist. No. 19937, 2004- *Page 15 
Ohio-1312, at ¶ 36 ("[n]o matter what reasons the parties had for placing their property in a partnership, the fact is that Valerie Arms was marital property before and after the partnership was created").
 {¶ 43} The cases cited by Terrance cite to the Ohio Uniform Partnership Act, which provides that "[a] partner, subject * * * to any agreement between the partners, has an equal right with his partners to possess specific partnership property for partnership purposes; but he has no right to possess the property for any other purpose without the consent of his partners." R.C. 1775.24(B)(1). The statute also provides that "[a] partner's right in specific partnership property is not assignable except in connection with the assignment of rights of all the partners in the same property." R.C. 1775.24(B)(2). Neither of these provisions is violated by the trial court's assignment of specific Moser Family Partnership property in the present case, inasmuch as the court has jurisdiction over the rights of all partners with an interest in the partnership property and may compel the acquiescence of the parties to the assignment.
 {¶ 44} Furthermore, Terrance, as general partner, has broad authority under the Moser Family Partnership agreement to alienate partnership assets. The agreement provides the general partner "has the full and exclusive power on the Partnership's behalf * * * to manage, control, administer and operate its business and affairs and to do or cause to be done anything he deems necessary or appropriate for the Partnership's business, including (but not limited to) the power and authority to (1) sell real or personal property to any person * * *; (2) buy, lease, or otherwise acquire real or personal property to carry on and conduct the Partnership's business; * * * (5) assign any debts oweing to the Partnership; * * * and (14) quitclaim, release or abandon any Partnership *Page 16 
assets with or without consideration." Ohio's Uniform Partnership Act recognizes that an agreement between the partners may supersede the limitations imposed by the Act. R.C. 1775.24(B)(1).
 {¶ 45} There was considerable testimony from various witnesses at the hearings which likened Terrance's powers under the Moser Family Partnership to those of, in Rasnick's words, "a benevolent dictator." There was also evidence at the hearings that Terrance exercised this power freely. When the marital residence was inadvertently transferred into the Partnership, Terrance transferred it out. When advised to fund Barbara's marital deduction trust before making lifetime conveyances to the children, Terrance conveyed the Sanford property from the Partnership to Barbara's revocable trust. Terrance used Partnership funds to meet the expenses of other businesses owned by him. As noted above, there was considerable "cash flow" between entities existing both within and without the Partnership.
 {¶ 46} Accordingly, the trial court had jurisdiction over the Moser Family Partnership and its partners and could exercise that jurisdiction to order Terrance to assign specific partnership properties so as to effectuate a fair and equitable division of property.
 {¶ 47} The first assignment of error is without merit.
 {¶ 48} In the second assignment of error, Terrance argues that the trial court's division of marital assets is inequitable and that the court failed to consider all of the relevant factors in R.C.3105.171(F).
 {¶ 49} "A trial court has broad discretion in making divisions of property in domestic cases." Middendorf v. Middendorf,82 Ohio St.3d 397, 401, 1998-Ohio-403, *Page 17 
citing Berish v. Berish (1982), 69 Ohio St.2d 318, 319. "A trial court's decision will be upheld absent an abuse of discretion." Id., citingHolcomb v. Holcomb (1989), 44 Ohio St.3d 128, 131.
 {¶ 50} "In divorce proceedings, * * * the court shall divide the marital and separate property equitably between the spouses." R.C. 3105.171(B). "In making a division of marital property * * *, the court shall consider all of the following factors * * * (4) The liquidity of the property to be distributed; (5) The economic desirability of retaining intact an asset or an interest in the asset; [and] (6) The tax consequences of the property division upon the respective awards to be made to each spouse." R.C. 3105.171(F).
 {¶ 51} "A trial court's failure to consider the R.C. 3105.171(F) factors when dividing marital property is an abuse of discretion. * * * An exhaustive recitation of each factor is unnecessary; however, the trial court must consider any factor relevant to the circumstances presented in the underlying case." Schriefer v. Schriefer, 11th Dist. No. 2003-L-040, 2004-Ohio-2206, at ¶ 12 (citations omitted).
 {¶ 52} Terrance argues the trial court failed to consider the liquidity of the property assigned to him, the fact that much of the real property is still undeveloped and subject to significant mortgage obligations, for which he is personally liable. Terrance also argues the trial court failed to consider the desirability of maintaining the Moser Family Partnership intact until all of its assets could be liquidated in the normal course of business.
 {¶ 53} We begin by noting that, except for two notes receivable and the Terracove properties, the trial court did maintain the assets contained within the Moser Family Partnership intact by awarding them to Terrance. Although maintaining all of the *Page 18 
Partnership assets intact might provide greater economic benefit, it is inherent in any divorce proceeding that assets be divided. As the Supreme Court has recognized in a similar context, the incentive "to preserve * * * asset[s] in order that each party can procure the most benefit" must be balanced against the need "to disentangle the parties' economic partnership so as to create a conclusion and finality to their marriage." Hoyt v. Hoyt (1990), 53 Ohio St.3d 177, at paragraph two of the syllabus.
 {¶ 54} In the present case, the trial court recognized that much of the inequity in preserving the Moser Family Partnership was that it allowed Terrance full control, use and enjoyment of the marital assets within the partnership while denying these benefits to Barbara.
 {¶ 55} In his post-trial brief to the trial court, Terrance advocated awarding Barbara an in kind distribution of the Terracove real estate and notes receivable. Terrance noted that Terracove was a finished development and that its property was currently marketed. Terrance also noted that, unlike the other assets within the Moser Family Partnership, the Terracove properties were owned directly by the Partnership and not through a subsidiary or jointly with a third party. Finally, Terrance argued that such a distribution was appropriate because there was very little cash to distribute to the parties and because it allowed both parties to participate in the tax consequences from the sale of assets. The trial court accepted Terrance's reasons for awarding these assets "in kind" to Barbara.
 {¶ 56} The trial court recognized the lack of liquidity in the assets and their encumbered value in other ways. The trial court noted the negative equity in certain assets. The trial court incorporated an "illiquidity discount" into the net value of the *Page 19 
Partnership. The trial court allowed Terrance to pay the $739,329 meant to equalize the property division over a period of fifteen years.
 {¶ 57} Lastly, Terrance argues the trial court failed to consider the estate tax consequences of dismantling the Moser Family Partnership. Although the trial court's distribution essentially subjects Terrance and Barbara's assets to the same estate and inheritance liabilities that existed prior to the creation of the Partnership, this consideration does not render the court's distribution inequitable. The tax consequences of the division of the marital estate are a consideration with respect to the spouses who generated the estate, not the children who are meant to inherit the estate.
 {¶ 58} For the foregoing reasons, the trial court did not abuse its discretion in dividing the marital estate. The second assignment of error is without merit.
 {¶ 59} The decision of the Portage County Court of Common Pleas, Domestic Relations Division, terminating the marriage of Terrance and Barbara and dividing their marital estate, is affirmed.
CYNTHIA WESTCOTT RICE, P.J., MARY JANE TRAPP, J., concur.
[1] Four Memorandum of Gift letters were prepared for Barbara. Two purport to make gifts of partnership interest "held in my account in the Terrance L. Moser Trust of May 21, 1996"; and two purport to make gifts of partnership interest "held in my account in the Barbara Lyn Moser Trust of May 21, 1996." The interests conveyed by Terrance's Memorandum of Gift letters were "held in my account in the Terrance L. Moser Trust of May 21, 1996."
[2] The other half of Rootstown Storage is owned by Terrance's father, Robert Moser. *Page 1