OPINION *Page 2 
{¶ 1} The defendant-appellant, Steven L. Jackson, appeals the judgment of the Paulding County Common Pleas Court classifying the parties' property as marital or non-marital and dividing the marital assets. On appeal, Steven contends that the trial court erred when it classified a parcel of farmland as non-marital and when it failed to consider a $10,000 payment Steven had made to the plaintiff-appellee, Lori J. Jackson, earlier in the divorce proceedings. For the reasons herein, the judgment of the trial court is affirmed in part and reversed in part.
 {¶ 2} The parties were married on November 9, 1979 in Paulding County, Ohio and are the parents of two emancipated children. On April 5, 2007, Lori filed a complaint for divorce. The trial court held a final hearing July 6, 2007 and issued a decision on October 11, 2007. Lori's counsel prepared a journal entry in conformity with the court's decision, and the journal entry was filed on October 31, 2007. Steven appeals the judgment of the trial court, raising one assignment of error for our review.
 Assignment of Error The trial court erred as a matter of law and abused its discretion in its decision to classify certain property as marital and non-marital resulting in the distribution of property not being equal between the parties. *Page 3 
 {¶ 3} To support his assignment of error, Steven contends that Lori inherited approximately 100 acres of farmland through her mother's estate in 2003 or 2004. Steven alleges that Lori subsequently transferred a one-half interest in the land to him, making them joint tenants with the right of survivorship. Following the transfer, part of the farmland was sold to the state of Ohio for a road-widening project, leaving the parties a parcel of approximately 88 acres. Steven acknowledges that inherited property is generally considered separate property, but he argues that Lori's gift effectively transmuted the property into marital property, which should have been divided between them. Steven also claims that he was ordered to pay $10,000 from his personal bank account, and the trial court failed to address this "advance" in its decision.
 {¶ 4} In response, Lori contends that the trial court did not err. Lori argues that Steven received more than one-half the value of their marital property because she disclaimed her interest in a life insurance policy and other marital assets. Lori claims that Steven "pressured" her into transferring a one-half interest in the farmland to him, and the trial court apparently deemed her testimony more credible than Steven's. Based on the "pressure" asserted by Steven, Lori contends that the transfer of the real property was ineffective to convert it to marital property and was correctly classified as separate property. As to the $10,000 payment Steven made to Lori, she claims the money came from joint accounts that *Page 4 
Steven closed and transferred into his name only, and that the money was applied toward her 2006 tax liability for her share of the capital gains tax assessed on the sale of land to the state for the road-widening project.
 {¶ 5} "Marital property" is defined in R.C. 3105.171(A)(3)(a) and specifically excludes "separate property." R.C. 3105.171(A)(3)(b). "`Separate property' means all real and personal property and any interest in real or personal property that is found by the court to be any of the following: [a]n inheritance by one spouse by bequest, devise, or descent during the course of the marriage * * * ." R.C.3105.171(A)(6)(a)(i). "In determining whether the trial court has appropriately categorized property as separate or marital, the standard of review is whether the classification is against the manifest weight of the evidence." Eggeman v. Eggeman, 3d Dist. No. 2-04-06,2004-Ohio-6050, at ¶ 14, citing Henderson v. Henderson, 3d Dist. No. 10-01-17, 2002-Ohio-2720, at ¶ 28. See also Scott v. Scott, 11th Dist. No. 2007-T-0059, 2008-Ohio-530, at ¶ 19, quoting Moser v. Moser, 11th Dist. No. 2006-P-0047,2007-Ohio-4109, at ¶ 20.
 {¶ 6} If the trial court's determination is supported by some competent, credible evidence, it will not be reversed as being against the manifest weight of the evidence. Id., citing DeWitt v. DeWitt, 3d Dist. No. 9-02-42, 2003-Ohio-851, at ¶ 10. See also Scott, at ¶ 19, citing Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273, citing C.E. Morris Co. v. Foley Const. Co. *Page 5 
(1978), 54 Ohio St.2d 279, 376 N.E.2d 578, at syllabus ("A trial court's factual findings are entitled to a presumption of correctness and will not be reversed as being against the manifest weight of the evidence if they are supported by competent, credible evidence.").
 {¶ 7} Separate property can be converted to marital property if one spouse grants an interest in the property to the other spouse.Eggeman, at ¶ 29, citing Helton v. Helton (1996), 114 Ohio App.3d 683,685, 683 N.E.2d 1157. "In those circumstances, the key issue is donative intent." Id., citing Helton, at 685. The parties do not dispute that the farmland originated as Lori's separate property because it was inherited through her mother's estate. The dispute arises over the effect of the transfer making the property a joint tenancy between Lori and Steven, with the determinative factor being Lori's donative intent at the time the gift was made.
 {¶ 8} In Ohio, a "donee has the burden of showing by clear and convincing evidence that the donor made an inter vivos gift."Helton, at 686. "[T]he requisites of a valid inter vivos gift are an intention on the part of the donor to make an immediate gift of property, delivery of the property to the donee, and acceptance of the gift by the donee." Eggeman, at ¶ 30, citing Bolles v. Toledo TrustCo. (1936), 132 Ohio St. 21, 4 N.E.2d 917. "If any of the elements are absent, the gift fails." Id., citing Bolles. See also In re Estate ofHaas, 10th Dist. *Page 6 
No. 07AP-512, 2007-Ohio-7011, at ¶ 38, quoting Studniewski v.Krzyzanowski (1989), 65 Ohio App.3d 628, 632, 584 N.E.2d 1297, citingSaba v. Cleveland Trust Co. (1926), 23 Ohio App. 163, 165, 154 N.E. 799;Bolles, at paragraph one of the syllabus ("`To support a gift intervivos there must exist clear and convincing evidence of a present intention on the part of the donor to transfer title and right of possession as well as evidence of a completed delivery of the subject matter of the gift with the donor relinquishing ownership, dominion and control over it.'").
 {¶ 9} Since both parties acknowledged the transfer, the only issue was whether Lori had donative intent when she transferred the land. "Donative intent is established if a transferor intends to transfer a present possessory interest in an asset." Brate v. Hurt,174 Ohio App.3d 101, 2007-Ohio-6571, 880 N.E.2d 980, at ¶ 21, citing Helton. Steven testified that Lori gave him one-half of the property by adding his name to the deed. (Hearing Tran., Jan. 4, 2008, at 16). He stated that he did not ask her to make the gift to him, but since she did, he believed he was entitled to one-half of the property or one-half of its value. (Id. at 16-17). In contrast, Lori testified as follows:
 Q: Okay. And at some point in the year 2005 or so did you remember deeding that property over into both your and your husband's names?
 A: I feel I was pressured to do so. *Page 7 
 Q: Did he ask — whose idea was it for you to do that?
 A: Steve.
 Q: And did he ask you to do that?
 A: There was a lot of just comments and at the time he was dealing with, I guess I've let him deal with everything, and it was just easier if his name was on it also other than just mine.
(Id. at 58:10-21).
 {¶ 10} The trial court determined:
 That in 2003, [Lori] inherited approximately 109 acres from her mother's estate which was conveyed in 2005, under pressure by [Steven], from the parties to themselves as joint tenants with rights of survivorship.
 That [Lori] had no donative intent at the time of the conveyance and the approximately 109 acre farm retained its identity as [Lori's] separate property[.]
(Decision, Oct. 11, 2007, at 2, ¶ 8-9). Most of the trial court's determination is made up of legal conclusions rather than factual findings. Based on the above definition of "donative intent," the trial court erred when it found that Lori lacked donative intent. Lori's testimony was clear that she intended to "transfer a present possessory interest" in the land to Steven because she "let him deal with everything" and "it was just easier if his name was on it also[.]" While we acknowledge that trial courts are in the better position to weigh the evidence and assess witness credibility, Steven's and Lori's testimony is not wholly inconsistent. Whether Steven asked Lori to transfer the property into his name or *Page 8 
not, Lori indicated that she felt pressured, but did so anyway because it would be easier for her. Therefore, the trial court's finding that Lori lacked donative intent is not supported by competent and credible evidence and is against the manifest weight of the evidence.
 {¶ 11} Although Lori argues lack of donative intent, we believe her actual objection to be based on undue influence, which will allow a donor to set aside a valid inter vivos gift. Benedict v. Prorock (Nov. 10, 1977), 10th Dist. No. 77AP-467, at * 4. "`"The elements of undue influence include the following: (1) a susceptible party; (2) another's opportunity to exert influence; (3) the fact of improper influence exerted or attempted; and (4) the result showing the effect of such improper influence."`" MacDowell v. DeCarlo, 9th Dist. No. 23281, 2007-Ohio-249, at ¶ 15, quotingModie v. Andrews (July 26, 2000), 9th Dist. No. 19543, at * 3, quoting Lah v. Rogers (1998), 125 Ohio App.3d 164, 171,707 N.E.2d 1208. "To determine whether the particular influence was undue, a court must consider `"whether the influence was reasonable, given all the prevailing facts and circumstances."`" In re Estate of Haas, 10th Dist. No. 07AP-512, 2007-Ohio-7011, at ¶ 38, quotingModie, at * 3, quoting Krischbaum v. Dillon (1991), 58 Ohio St.3d 58,68, 567 N.E.2d 1291.
 {¶ 12} "`Where a confidential or fiduciary relationship exists between donor and donee, the transfer is looked upon with some suspicion that undue *Page 9 
influence may have been brought to bear on the donor by the donee.'"Hass, at ¶ 39, quoting Studniewski v. Krzyzanowski (1989),65 Ohio App.3d 628, 632, 584 N.E.2d 1297, citing Willis v. Baker (1906),75 Ohio St. 291, 79 N.E. 466; McCluskey v. Burroughs (1982), 4 Ohio App.3d 182,446 N.E.2d 1143. "Under such circumstances, `a presumption arises, and the party with the superior position must go forward with proof on the issue of undue influence and fairness of the transaction while the party attacking a completed gift on that basis retains the ultimate burden of proving undue influence by clear and convincing evidence.'" Id., quotingStudniewski, at 632; citing Smith v. Shafer (1993), 89 Ohio App.3d 181,183, 623 N.E.2d 1261; Brooks v. Bell (Apr. 10, 1998), 1st
Dist. No. C-970548.
 {¶ 13} Again, although we must defer to the trial court's decision concerning the weight of the evidence and witness credibility, Lori has not shown by clear and convincing evidence that any "pressure" exerted by Steven was unreasonable. Lori merely indicated that she felt pressured and that Steven made "comments." There was no evidence presented at the final hearing that Steven was abusive toward Lori; there was no evidence indicating what kinds of "comments" Steven made to Lori; and there was no other evidence showing that any "pressure" was unreasonable. Lori's own testimony shows that she simply found it easier to have the property in both of their names because Steven handled *Page 10 
most of their affairs. Furthermore, simple "pressure" is not a legal standard used to set aside a gift. There are many situations where people make gifts while under pressure to do so, the question is whether the pressure was improper, and Lori has not carried her burden of proving an improper influence. Accordingly, the trial court erred when it determined that farmland inherited by Lori through her mother's estate remained Lori's separate property.
 {¶ 14} As to the $10,000 in dispute, Steven testified that he maintained a checking account in his name only with a balance of approximately $69,000. (Hearing Tran., at 34). He stated that the money was marital, and that he had paid capital gains tax of $10,000 from the account. (Id.). Later in the hearing, Steven testified that he and Lori sold a portion of the farmland Lori had inherited to the state. Of the proceeds, Steven indicated that $30,000 was placed into investments, and $10,000 went to Lori to pay taxes. (Id. at 35).
 {¶ 15} "A trial court's allocation of marital property and debt will not be reversed absent an abuse of discretion." Stump v. Stump, 3d Dist. No. 8-07-11, 2007-Ohio-6553, at ¶ 8, citing Holcomb v. Holcomb (1989),44 Ohio St.3d 128, 131, 541 N.E.2d 597. "An abuse of discretion connotes more than a mere error of judgment; it implies that the trial court's attitude is arbitrary, unreasonable, or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. The trial court determined that both the proceeds from the sale of *Page 11 
the farmland and the "separate" account kept by Steven were marital and divided those assets between the parties. (Decision, at 2, ¶ 10-11; 4, ¶ 20; Journal Entry, Oct. 31, 2007, at ¶ 13). The court also determined that the capital gains tax liability arising from the sale of a portion of the inherited farmland was a marital debt. (Decision, at 2, ¶ 11). Based on the evidence presented at the final hearing, we cannot find that the trial court abused its discretion when it did not award to Steven an additional $10,000. The sole assignment of error is sustained.
 {¶ 16} The judgment of the Paulding County Common Pleas Court is affirmed as to the distribution of $10,000 Steven paid to Lori so she could pay capital gains tax in 2006, and the judgment is reversed as to whether the farmland inherited from Lori's mother's estate is marital or separate property. This matter is remanded for further proceedings.
Judgment affirmed in part,
reversed in part,
and cause remanded.
 PRESTON and ROGERS, JJ., concur *Page 1