[Cite as *Osborne v. Malkamaki*, 2014-Ohio-2874.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| BETH OSBORNE, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2012-L-134** |
| MATT MALKAMAKI, et al., | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Domestic Relations Division, Case No. 11 DR 000397.

Judgment: Affirmed.

*Gary S. Okin*, Dworken & Bernstein Co., L.P.A., 60 South Park Place, Painesville, OH 44077 (For Plaintiff-Appellee).

*Carl L. DiFranco*, Cannon, Aveni & Malchesky Co., L.P.A., 41 East Erie Street, Painesville, OH 44077 (For Defendant-Appellant).

COLLEEN MARY OTOOLE, J.

{¶1}   Defendant-appellant, Matt Malkamaki, appeals the Judgment Entry of Divorce, rendered by the Lake County Court of Common Pleas, Domestic Relations Division.  The issue before this court is whether a trial court errs by determining that a husband's contributions from his separate funds to a jointly-owned limited liability company become marital in the absence of a donative intent.  For the following reasons, we affirm the decision of the court below.

{¶2}   On June 13, 2011, plaintiff-appellee, Beth Osborne, filed a Complaint for Divorce against Malkamaki and various business entities in which he held an ownership interest.[1]

{¶3}   On July 25, 2011, Malkamaki filed his Answer and Counterclaim for Divorce.

{¶4}   On January 24 and 30, 2012, trial on the merits was held before a magistrate of the domestic relations court.

{¶5}   On May 13, 2012, the magistrate issued his Decision, including the following relevant findings of fact and conclusions of law:

{¶6}   The Plaintiff and the Defendant were married on June 23, 2006, separated on or about January 23, 2009, and have no children born as issue of their marriage.

{¶7}   Barefoot Development, LLC was organized under the laws of the State of Ohio and registered as a Limited Liability Company on or about May 31, 2007.  On or about June 5, 2007, * * * the parties entered into an Operating Agreement for Barefoot Development, LLC * * *.

{¶8}   The purpose of Barefoot Development was to take advantage of Wife's expertise in real estate sales, and Husband's expertise in construction.  Husband, Matt Malkamaki, and Wife, Beth Osborne Malkamaki, are named in the Operating Agreement as the only

---

1.  These were Barefoot Development, LLC; Malkamaki Builders, Inc.; Emerald Point, Inc.; Hidden Harbor Marina, Inc.; AG Edwards; Wachovia Securities; and First Place Bank.

"Members/Interest Holders" of Barefoot Development, LLC * * * each assigned a "percentage" of 50%.

{¶9} During the marriage, Barefoot Development owned, or had assigned to it, four different parcels of real estate, hereinafter referred to as: "Fairview", "Salida", "Manner", and "Skinner". All four properties were transferred to Barefoot free and clear of any liens or encumbrances. Fairview has been sold, Skinner is unimproved land, and Salida and Manner are rental houses. It is not disputed that Husband used his separate, premarital property to purchase the four parcels of real estate for Barefoot Development. However, at the time that it was transferred to Barefoot, Skinner was owned by Beth Properties Ltd., a Corporation owned solely by Wife. Prior to this marriage, Husband owned a house on 9411 Headlands Rd., Mentor, OH 44060. Some of the funds used to purchase the four parcels for Barefoot came from a line of credit taken out against Husband's Headlands Road home. Husband also had premarital funds available from a substantial products liability settlement.

* * *

{¶10} Magistrate finds that, under the Operating Agreement the parties are each entitled to one half of the net profits realized by Barefoot. Thus, upon divorce, each party has a separate property interest in one half of the new profits. * * * Wife's argument that she is

3

entitled to one half of the gross amount realized from the sale of a Barefoot property is not supported by the evidence, the Operating Agreement, or divorce law. Magistrate rejects Wife's argument that Husband *gifted* the funds used to purchase the Barefoot properties. There was no evidence from which Magistrate could find that Husband had donative intent when he formed Barefoot with Wife. Barefoot was established as a for-profit business. This business transaction was memorialized by the formation of a Limited Liability Corporation [sic] and by the execution of the Operating Agreement. Magistrate also rejects Wife's claim that Husband is not entitled to be reimbursed for funds that he borrowed to purchase properties for Barefoot. The fact that Husband's separate funds were used to purchase the Barefoot properties is undisputed. Wife's argument is apparently based upon a provision of the Operating Agreement which states that no single member may enter into "… contracts, obligations, loans, liabilities, liens or otherwise bind the Company when the dollar value … shall be greater than One Thousand Dollars ($1000)." Wife argues that there is no document showing that she ever approved loans to Barefoot from Husband. As noted above, the Operating Agreement provides that Husband's Capital Account should be credited with any contributions made to Barefoot by Husband, and with company liabilities assumed by Husband. Wife at least implicitly agreed to the transactions whereby the four

4

parcels were acquired and transferred to Barefoot. She therefore gave her tacit approval to the transactions, including the fact that Husband provided the capital used to purchase the properties. Wife is entitled to be compensated for the services she provided to Barefoot including real estate commissions earned. Husband is entitled to be reimbursed for funds loaned for the purchase of properties, and Husband, or his construction company, is also entitled to be paid for construction work done on the properties. Husband and Wife are each entitled to one half of any net profits. * * *

{¶11} Fairview was sold in 2009 for approximately $183,000 and from the proceeds of that sale, Malkamaki Builders was paid $30,000 for renovations/repair work; and about $150,000 was paid against the First-Place Bank mortgage to reimburse Husband for the funds he borrowed against his Headlands Road home to purchase Fairview; and the balance was paid to Plaintiff to reimburse her for work she did on the Fairview project. * * * Had the parties realized a new profit on Fairview, then they each would have been entitled to one half of the net profit. Neither party presented evidence showing that a net profit was made on Fairview. Magistrate therefore finds that the Fairview property transaction was properly closed and that no further reallocation of funds is warranted.

**{¶12}** On March 27, 2012, Osborne filed Objections to Magistrate's Decision, and on May 18, 2012, she filed a Supplement to Objections.

**{¶13}** On September 11, 2012, the domestic relations court ruled on Osborne's Objections. With respect to the Barefoot real estate holdings, the court upheld the Objections and modified the Magistrate's Decision, in relevant part, as follows:

> **{¶14}** Wife argues Husband's funds provided to the LLC were gifts, not capital contributions as found by the Magistrate, nor loans as previously argued by Husband. Husband testified [that] he is due $363,202.55 from the LLC as of December 31, 2011 for loans he made to it. Loans to the LLC are specifically governed by Section 3.7, 5.1 and 5.1.2 of the agreement. Section 3.7 entitled "Loans" states:

> **{¶15}** Any Member may, at any time, make or cause a loan to be made to the Company in any amount and on those terms upon which the Company and the Member agree.

> **{¶16}** Section 5.1 and 5.1.2 read as follows:

> **{¶17}** 5.1 *MANAGEMENT*: The Company shall be managed equally by the Members.

> **{¶18}** 5.1.2 No single member shall have authority to approve expenses, enter into contracts, obligations, loans, liabilities, liens or otherwise bind the Company when the dollar value

of such expense, contract, obligation, loan liability or lien shall be greater than One Thousand Dollars ($1,000).

{¶19} The Company, according to section 3.7, is managed equally by the members. Therefore, Husband needed Wife's concurrence as an equal 50% partner for the Company to receive a loan from a member. The transcript is devoid of such evidence as to any agreement from Wife for the LLC to accept various loans from Husband. Wife testified she was not asked about loans to be made to the Company by Husband. Nor was there any documentation executed between the Company and Husband at the time of the purported loans. Section 5.1.2 limits a single member to a maximum of $1,000 in approving contracts, obligations, loans, liabilities or liens on behalf of the LLC, to avoid the unilateral overextending of the liabilities of the Company, as occurred herein. The evidence is clear [that] Husband failed to comply with sections 5.1 and 5.2 as to his claim of loans to the Company.

{¶20} In addition, Husband was appointed as the statutory agent of the LLC by the operating agreement. Husband and his accountants prepared the Internal Revenue Service Forms 1065 for tax years 2008, 2009, and 2010, according to Husband's testimony. Even though Wife is a 50% member of the LLC, she had no knowledge of said filings, which is contrary to section 8.4 of the Agreement * * *. The transcript shows the first time she reviewed the LLC annual

Forms 1065 Returns of Partnership Income was through discovery herein. This Judge concurs with the Magistrate's analysis that the funds provided by Husband to the LLC are not loans by the terms of the operating agreement.

{¶21} For Husband's funds to be considered capital contributions, compliance with the Internal Revenue regulations is necessary. * * * [T]he Operating Agreement provides in its section of defined terms: "'Regulation' means the income tax regulations, including any temporary regulations, from time to time promulgated under the Code." [The 2008, 2009, and 2010 Forms 1065] do not support the Magistrate's analysis the funds are capital contributions of Husband to the LLC.

{¶22} Said funds, therefore, are property contributed from Husband to the LLC. Although Husband's contributions to the LLC came from his separate property, the contributions became marital property once in the LLC. As Husband testified, he and Wife formed the LLC to build and market homes; the LLC was designed to capitalize on their professional expertise. Barefoot Development, LLC was formed after the parties' 2006 marriage and is therefore a marital asset subject to division and distribution pursuant to Revised Code 3105.171. * * *

{¶23} As a result of finding Husband's contributions are voluntary, this Judge rejects the portion of the Magistrate's Decision which

8

provided [that] each party is entitled to one-half (1/2) of the net profits realized by the LLC, after payment of Husband's loans to the LLC. Calculations of net profits shall disregard Husband's contributions. However, Husband is entitled to be compensated for the construction work done on the properties, pursuant to the operating agreement of the LLC. Wife is entitled to be compensated for the services she provided to the LLC, including real estate commissions earned and prospective commissions on the three remaining properties pursuant to the operating agreement. * * * [With respect to the Fairview Property,] Husband gave himself a $153,000 distribution from the sale as payment for his loan to the LLC. Since this Court has already found Husband's loans to the LLC are invalid, * * * Wife is due an additional $76,500 from Husband from the sale of the Fairview Property.

{¶24} On October 23, 2012, the domestic relations court entered a Judgment Entry of Divorce.

{¶25} On November 19, 2012, Malkamaki filed his Notice of Appeal. On appeal, Malkamaki raises the following assignment of error:

{¶26} "[1.] The trial court erred in finding that Appellee-Wife met her burden to prove by clear and convincing evidence that Appellant-Husband gifted his separate property interest to wife."

{¶27} We review the trial court's judgment for abuse of discretion, the standard generally applied when reviewing a trial court's adoption of a magistrate's decision.

9

*Wolkoff v. Bloom Bros. Supply, Inc.*, 11th Dist. Geauga No. 2012-G-3092, 2013-Ohio-2403, ¶32. Under this deferential standard, an abuse of discretion is a judgment "'which does not comport with reason or the record,' and as one in which the court failed 'to exercise sound, reasonable, and legal decision-making.'" (Citation omitted.) *Id.*

{¶28} It is well-recognized that a spouse may convert his or her separate property into marital property by an inter vivos gift to the other spouse during the course of the marriage. *Helton v. Helton*, 114 Ohio App.3d 683 (2d Dist.1996). "The essentials of a valid gift *inter vivos* are (1) an intention on the part of the donor to transfer the title and right of possession of the particular property to the donee then and there and (2), in pursuance of such intention, a delivery by the donor to the donee of the subject-matter of the gift to the extent practicable or possible, considering its nature, with relinquishment of ownership, dominion and control over it." *Bolles v. Toledo Trust Co.*, 132 Ohio St. 21, 4 N.E.2d 917 (1936), paragraph one of the syllabus. The party asserting the conversion to marital property bears the burden of demonstrating the required elements of a valid gift by clear and convincing evidence. *Id.* at paragraph two of the syllabus.

{¶29} An appellate court may not independently weigh the evidence but should presume that the trial court's findings are correct when they are supported by some competent and credible evidence. *Myers v. Garson*, 66 Ohio St.3d 610, 614 (1993); *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). Even some evidence will be considered sufficient to sustain the trial court's judgment on appeal. *Gallo v. Gallo*, 11th Dist. Lake No. 2000-L-208, 2002-Ohio-2815, ¶28, citing *West v. West*, 9th Dist. Wayne No. 01 CA00045, 2002-Ohio-1118, ¶17.

{¶30} When the record contains little direct evidence on the issue of donative intent we must look to the totality of the circumstances. *Kovacs v. Kovacs*, 6th Dist. Sandusky No. S-09-039, 2011-Ohio-154, ¶15; *Hippely v. Hippely,* 7th Dist. Columbiana No. 01 CO 14, 2002-Ohio-3015, ¶18. The trial court held that husband's funds, provided to the limited liability company (LLC), were not loans under the terms of the operating agreement as husband did not obtain wife's consent in order for the LLC to accept these loans. The trial court also determined that husband failed to comply with the necessary Internal Revenue regulations, so as to qualify the funds as capital contributions. Based upon these findings, the trial court determined that the funds were a voluntary contribution from husband to the LLC.

{¶31} Husband placed the funds into an LLC that listed only him and wife as Members/Interest Holders, each assigned a fifty percent interest. Wife also contributed a parcel of property to the LLC. The evidence established that wife would contribute her real estate expertise for reduced or no payments, while husband's construction company would be paid for the construction services it provided. Under the LLC articles the profits would be divided equally by husband and wife.

{¶32} Husband failed to take any steps to distinguish these funds as separate property under the LLC articles. Husband could have loaned these funds to the LLC, with wife's written consent, as the LLC articles outline. Or husband could have complied with the Internal Revenue regulations that would have qualified these funds for designation as capital contributions under the LLC articles. Neither were done. The articles of the LLC and its terms are the best evidence of the parties' intent to comingle the assets. And although neither the parties, nor the court, are bound exclusively by the

11

terms of the LLC in dividing the marital assets, the agreement is substantial evidence of their intent to transfer and comingle those assets placed in the LLC.

{¶33} Under the totality of the circumstances, husband's donative intent was established by his placing funds into an LLC, co-owned by his wife. By not taking any steps to maintain the separate identity of these funds, husband effectively stated his intent to his wife, who was also his business partner, as well as to third parties. As such, the trial court's determination that husband's contribution was voluntary is supported by competent, credible evidence.

{¶34} The sole assignment of error is without merit.

{¶35} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas, Domestic Relations Division, is affirmed. Costs to be taxed against the appellant.


DIANE V. GRENDELL, J., concurs with a Concurring Opinion,

CYNTHIA WESTCOTT RICE, J., dissents with a Dissenting Opinion.

_____

{¶36} DIANE V. GRENDELL, J., concurs in judgment only with a Concurring Opinion.

{¶37} Due to the ill-advised granting of the application for reconsideration, I concur in the judgment only of the writing judge, while maintaining my original position (also followed by the dissenting judge) that there is no evidence of defendant-appellant, Matt Malkamaki's, donative intent with respect to the subject real estate.

12

{¶38} On the issue of Malkamaki's donative intent, this court's prior opinion stated:

{¶39} In the present case, there is no evidence of a donative intent on Malkamaki's part other than the fact that the properties purchased with his separate funds were transferred to Barefoot Development. Malkamaki testified that it was never his intent that the properties be gifted. Osborne offered no testimony as to what Malkamaki's intentions were with respect to the properties. The 2008, 2009, and 2010 general ledgers for Barefoot Development evidence Malkamaki's intention that the monies used to purchase the properties be considered loans.

It has often been held that "where the separate property is placed in joint title to accomplish a specific objective, rather than due to a true donative intent, the property remains separate despite the joint title." *Bell v. Bell*, 2nd Dist. No. 2002 CA 13, 2002-Ohio-5542, ¶ 16 (cases cited); *accord Seifert v. Seifert*, 11th Dist. Trumbull No. 2011-T-0103, 2012-Ohio-3037, ¶ 15; R.C. 3105.171(H) ("the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property"). Here, the parties created Barefoot Development as a holding company for the sale of property. Without the use of Malkamaki's separate funds to purchase the real estate, Barefoot was without the capital to begin

13

operating. Malkamaki's purchase, then, was necessary for the success of the business venture, and did not necessarily reflect any intent of a gift to Osborne.

*Osborne v. Malkamaki*, 11th Dist. Lake No. 2012-L-134, 2013-Ohio-4752, 3 N.E.3d 1261, ¶ 29-30.

{¶40} The writing judge maintains that the "articles of the LLC and its terms are the best evidence of the parties' intent to comingle the assets," and that Malkamaki's donative intent was "established by his placing funds into an LLC, co-owned by his wife," and "[b]y not taking any steps to maintain the separate identity of these funds." *Supra* at ¶ 32 and 33.

{¶41} The justifications of the writing judge do not survive scrutiny. The "assets" at issue are parcels of real property, not funds, as stated by the writing judge. To suggest that parcels of real estate may be comingled so as to lose their character as separate property is nonsensical. Real property is a preeminently traceable asset.

{¶42} Moreover, the LLC documents referenced by the writing judge affirmatively demonstrate a lack of donative intent. Under the operating agreement, Osborne and Malkamaki were distinct members and each assigned a fifty percent interest and separate capital accounts, not co-owners as suggested by the writing judge. In 2008, 2009, and 2010, Malkamaki filed 1065 Forms evidencing his intent that the separate funds used to purchase the properties be considered loans on behalf of the LLC.

{¶43} In brief, there was no comingling or donative intent. For the reasons stated in this court's original opinion, however, the trial court's judgment may properly

14

be affirmed based on the court's un-appealed findings that Malkamaki defied court orders and concealed assets. R.C. 3105.171(E)(3) and (5) (where a spouse fails "to disclose in a full and complete manner all marital property, separate property, and other assets * * * the court may compensate the offended spouse with a distributive award"). On this basis, I concur in the judgment to affirm only, while disaffirming the reasons set forth in the writing judge's opinion.

_____

CYNTHIA WESTCOTT RICE, J., dissents with a Dissenting Opinion.

{¶44} Because I disagree with the analysis and disposition of the majority opinion, I respectfully dissent.

{¶45} The majority holds that the transfer of the four parcels to Barefoot, the marital LLC, is to be treated as a gift, even though husband purchased them with his separate funds, because the transfer does not qualify as a loan or a capital contribution.

{¶46} Wife, as the party asserting conversion of the parcels to marital property, had the burden to prove the elements of a gift, i.e., (1) the donor's intent to make a gift, (2) delivery of the property to the donee, and (3) acceptance of the gift by the donee.

{¶47} However, as the magistrate found, there is no evidence husband had donative intent when he formed Barefoot with wife. Husband testified it was never his intent to gift the parcels, and wife offered no testimony as to husband's intent with respect to the parcels. To the contrary, Barefoot was created as a holding company to build and sell homes and subdivisions for profit. Husband used his own funds to purchase the parcels for Barefoot. Without the use of husband's separate funds to

15

purchase the parcels, Barefoot would have lacked the capital necessary to begin operations. Husband's purchase of the parcels for Barefoot was thus necessary for the success of the parties' business venture and did not reflect an intent to gift the parcels.

{¶48} Further, the parties' operating agreement provides strong evidence that the transfer of the parcels to Barefoot was not a gift. Pursuant to that agreement, Barefoot was established as a for-profit business, with wife contributing her real estate expertise and husband providing construction services through his construction company. According to the operating agreement, all profits were to be divided equally by husband and wife. Further, the operating agreement provided that the parties were each designated 50 per cent interest holders, and each interest holder was assigned a separate capital account. According to the operating agreement, an interest holder's capital account was to be credited with his or her capital contributions. "Capital contribution" is defined in the operating agreement as the total amount of cash and the value of any other asset contributed to the company by a member. Thus, according to the parties' agreement, husband was to be given credit for the value of the parcels transferred to Barefoot.

{¶49} Moreover, as the magistrate found, wife implicitly agreed with the transactions whereby the four parcels were acquired and transferred to Barefoot. She thus gave her tacit approval to the transactions, including the fact that husband provided the capital ($370,000) to buy the properties for Barefoot.

{¶50} The majority opinion holds that, because the transfer of the parcels to Barefoot did not qualify as a loan or a capital contribution, husband's donative intent was established, and the properties must be considered a gift and thus marital property.

16

However, this holding is *not* supported by this court's case law. In *Seifert v. Seifert*, 11th Dist. Trumbull No. 2011-T-0103, 2012-Ohio-3037, ¶15, this court held the transfer of title to an asset by one spouse from his name to the parties' joint names is insufficient to establish a gift, especially where the transfer has a potential alternate purpose. *Accord Bell v. Bell*, 2nd Dist. Miami No. 2002 CA 13, 2002-Ohio-5542, ¶16 ("where the separate property is placed in joint title to accomplish a specific objective, rather than due to a true donative intent, the property remains separate despite the joint title.") Further, the majority does not cite any authority in support of its holding that husband's failure to prove a loan or capital contribution resulted in a gift.

{¶51} Moreover, the majority opinion, like the trial court, holds that the transfer of the parcels to Barefoot established husband's donative intent because Barefoot was a marital asset. However, the fact that Barefoot was a marital asset did not result in the properties losing their character as separate property upon transfer. It is the law in Ohio that "[t]he commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b).

{¶52} Thus, whether husband failed to demonstrate a valid loan or capital contribution under the terms of the operating agreement is immaterial. Wife stipulated that husband purchased the parcels with his own separate funds. Thus, the parcels were already his, and wife had the burden to prove that husband intended to gift them. This she failed to do. Contrary to the majority, husband was not required to prove the existence of a loan or capital contribution. It was enough that the parcels were purchased with his separate funds and remain traceable. Since wife stipulated husband

purchased the parcels with his separate funds, she cannot dispute the parcels are traceable to those funds. In the absence of any evidence of donative intent, I cannot agree that the parcels were converted to marital property upon their transfer to Barefoot.

{¶53} For the reasons outlined herein, I would reverse the judgment of the trial court.

{¶54} I therefore respectfully dissent.