[Cite as *Holston v. Holston*, 2019-Ohio-3649.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| JERRY LEE HOLSTON | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellant | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| PATRICIA HOLSTON | : | Case No. 18CA17 |
| | : | |
| Defendant-Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Knox County
Domestic Relations Court, Case No.
17DV01-0006


JUDGMENT:        Affirmed


DATE OF JUDGMENT:        September 9, 2019


APPEARANCES:

For Plaintiff-Appellant        For Defendant-Appellee

JOHN S. DILTS        ALYSSA L. GILES
28 South Park Street        109 East High Street
Mansfield, OH  44902        Mt. Vernon, OH  43050

*Wise, Earle, J.*

{¶ 1}   Plaintiff-Appellant Jerry Holston appeals the September 11, 2018 judgment entry of the Knox County Court of Common Pleas Division of Domestic Relations which adopted the decision of the magistrate granting appellant's divorce, determining marital property, and awarding appellee spousal support and a personal property settlement. Defendant-appellee is Patricia Holston.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   Appellant and appellee entered into an antenuptial agreement on March 2, 1992 wherein each waived any interest in the property of the other during marriage, and upon termination of the marriage by divorce, dissolution, or death.  The two married on May 23, 1992 and were married for 25 years. No children were born during the marriage.

{¶ 3}   In 2001, appellant was involved in a motorcycle accident. As a result, he was unable to return to his job at General Motors. In 2003, appellant received $900,000 in a personal injury suit stemming from the accident. The proceeds of the settlement were placed in to several different accounts and CDs, some jointly owned by the parties. Appellee managed the household finances from one such account.

{¶ 4}   Also during the marriage the parties purchased a property located at 0 Yankee Street in Knox County (the "0 Property"). Improvements were made to the property in 2003, before appellant's settlement was received and paid for with savings from both parties. The parties stipulated that its value with improvements is $17,500 and $2,000 without. Appellant purchased the adjoining property, 13001 Yankee Street, before the marriage, however the property was encumbered by a mortgage when he and

appellee married. The parties stipulated the value of 13001 Yankee Street is $122,850. Both properties were held in appellant's name alone.

{¶ 5} On January 12, 2017, appellant filed a complaint for Divorce which included a separation agreement signed by the parties and financial affidavits from both parties in the Knox County Court of Common Pleas Division of Domestic Relations. The separation agreement addressed division of personal property which included appellant retaining all real property, a 2003 Chevy Silverado, a 2014 Chevy Cruze, a 2012 Harley Davidson, and accounts, life insurance and retirement in his name alone. Appellee was to retain a 2007 Chevy Trailblazer and accounts, life insurance and retirement in her name alone. Further, the agreement stated the parties would retain all clothing, personal effects, household goods, furnishings and equipment as the parties had agreed upon.

{¶ 6} On February 23, 2017, appellee filed a Motion to Set Aside Separation Agreement and the Validity of the Ante-Nuptial Agreement. On November 9, 2017 a magistrate's order indicated the parties agreed:

> The ante-nuptial agreement is valid and enforceable as it pertains to the property listed on attached Exhibit A and Exhibit B of the ante-nuptial agreement. * * * However, the ante-nuptial agreement does not address spousal support or the real property purchased during the marriage. Therefore, the portions of the separation agreement that address spousal support and the real property purchased during the marriage will be set aside. Those issues shall be presented at a

final hearing. All other portions of the separation agreement shall be enforced.

{¶ 7}   Exhibits A and B of the antenuptial agreement listed property owned by the parties at the time the antenuptial agreement was drafted. Most of the items listed were no longer owned by the parties by the time the divorce was filed. Neither party filed a Civ.R. 53 motion to set aside the magistrate's order.

{¶ 8}   Final hearing on the matter took place on April 26, 2018. Counsel for appellee indicated his client would be asking for a monetary property settlement as she believed appellant was receiving the greater portion of marital property. Counsel for appellant asked the court to abide by the separation agreement.

{¶ 9}   During the hearing, the court heard testimony pertaining to the real property as well as tools and other equipment remaining in appellant's possession which had not been disclosed on his financial affidavit. Appellant objected only to appellee's actual knowledge of the value of the tools and equipment and their relevance, claiming the items had been purchased with his settlement funds. The trial court limited appellee's testimony to those items for which she knew the actual value.

{¶ 10} On June 4, 2018 the magistrate issued findings of fact and conclusions of law. Appellee was awarded spousal support in the amount of $400 a month plus processing for a period of nine years, as well as a cash settlement of $29,894.50.

{¶ 11} Appellant filed objections and supplemental objections to the magistrate's findings. Relevant to this appeal, appellant again never challenged the magistrate's November 9, 2017 finding that the antenuptial agreement did not address spousal

support. Appellant did, however, object to the magistrate's finding that the 0 Property was marital property as well as the magistrate's use of values of property retained by the parties to calculate appellee's cash settlement.

{¶ 12} The trial court sustained appellant's objection regarding the 0 Property, finding the deed to the property is in appellant's name only. However, the trial court overruled appellant's objection to the magistrate's finding that the improvements to the property were made with marital funds. The trial court further found that because spousal support was a contested issue, it was necessary and proper for the magistrate to determine what was marital and separate property, the value of that property, and then to divide that property equitably. The trial court further found that each party was awarded the same property agreed upon in their separation agreement, and that any additional property awarded was due to both parties failure to disclose all property in their financial agreement. Finally, the trial court noted that without the property settlement, appellant's spousal support would potentially increase.

{¶ 13} Appellant filed an appeal and the matter is now before this court for consideration. He raises three assignments of error;

I

{¶ 14} "THE COURT DID NOT FOLLOW THE ANTENUPTIAL AGREEMENT EXECUTED BY EACH PARTY AND FULLY EXPLAINED BY INDEPENDENT COUNSEL PRIOR TO THE MARRIAGE."

II

{¶ 15} "THE COURT DID NOT FOLLOW THE SEPARATION AGREEMENT EXECUTED BY EACH PARTY WHICH INVOLVED SIX (6) WEEKS OF NEGOTIATIONS."

III

{¶ 16} "THE COURT ERRED IN HOLDING THAT DEFENDANT/APPELLEE HAD NOT COMMITTED FINANCIAL MISCONDUCT THROUGHOUT THE TERM OF THIS MARRIAGE."

I

{¶ 17} In his first assignment of error appellant argues the trial court abused its discretion when it failed to follow the terms of the antenuptial agreement by awarding appellee spousal support, contrary to the terms of the agreement. We disagree.

{¶ 18} Civ.R. 53(D)(3)(b)(iv) provides:

{¶ 19} "Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)."

{¶ 20} Appellant asks us to find the antenuptial agreement prohibits an award of spousal support. Appellant never objected to the November 9, 2017 order, and has thereby waived his right to raise this issue on appeal. Even if that were not so, appellant's argument would fail. As outlined in our statement of facts, the November 9, 2017

magistrate's order indicated that while the parties agreed that the antenuptial agreement was a valid and enforceable document insofar as the property the parties had listed in their exhibits, the parties also agreed that the document did not address spousal support. We cannot interpret a document that does not address spousal support at all as prohibiting the same.

{¶ 21} The first assignment of error is overruled.

II

{¶ 22} Appellant next argues the trial court abused its discretion by awarding appellee a personal property settlement of $29,894.50. Specifically, appellant argues the separation agreement was valid, and based on "the court's own conduct during trial" the settlement award was unjust. Appellant argues the trial court based the award on his failure to enter evidence of personal property after the trial court stated no evidence of personal property was to be presented. We disagree.

{¶ 23} First, in order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶ 24} Next, spousal support was the central issue during the final hearing in this matter. As discussed above, both parties agreed that the antenuptial agreement did not address spousal support. R.C. 3105.18(B) provides a trial court may award reasonable spousal support to either party upon request and after the court determines the division or disbursement of property under R.C. 3105.171.

{¶ 25} In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, terms of payment, and duration of spousal support, R.C. 3105.18(C)(1) directs the trial court to consider the following 14 factors:

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's

contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable."

{¶ 26} Appellant does not argue that the trial court failed to comply with these statutory requirements. Instead he complains that the trial court based its award on his failure to enter evidence of personal property after stating no evidence of the value of personal property was to be presented at trial. The record does not support appellant's position.

{¶ 27} As discussed above, before final hearing in this matter, the magistrate found the separation agreement was valid and enforceable except for the issues of spousal support and real property purchased during the marriage which would be addressed at the final hearing. At final hearing, the following exchange took place:

The Court: Okay. Do you have the stipulations and the division of property, is it confined to any type of writing?

[Counsel for appellee]: No. [counsel for appellant] and I just discussed it beforehand.

* * *

[Counsel for appellee] I have a balance sheet that would reflect our position but, we don't have a Separation Agreement.

The Court: Okay. If there's - - if there's an agreement in regards to the *division* how - - I mean, I don't want - - there's no reason to present that through testimony. I think you have an agreement written out it will be more clear to the court, unless I'm missing something.

[Counsel for appellee]: Yeah, the key would be that Ms. Holston is going to ask for - - for a monetary settlement because her position will be that Mr. Holston is receiving a greater portion of the marital property, and so in order to make it equitable she's going to ask for some cash.

The Court: Okay.

[Counsel for appellant]: And we believe there indeed is a Separation Agreement that was signed and we're going to be putting that on.

T. 5-6, emphasis added.

{¶ 28} Thus, the trial court recognized that the parties had agreed as to the *division* of property, and it did not change anything the parties had agreed to; the parties were awarded the same property they had agreed to in their separation agreement. The court was nonetheless required to determine the value of that property in order to calculate spousal support. Any additional property included in the trial court's calculations was the result of failure by the parties to disclose all of their property in their financial affidavits. T. 62-64. Nowhere in the record does the trial court indicate the *value* of personal property will not be addressed, and appellant was not prohibited from presenting his own evidence of the same. We therefore find no abuse of discretion in the trial court's use of the value of property retained by each party to arrive at a property settlement and spousal support.

{¶ 29} Under this same assignment of error, appellant further argues numerous items of property considered by the court were purchased with his personal injury settlement, and therefore should have been excluded from spousal support calculations, as those items were separate property. The spouse seeking to identify and protect his own separate property, however, bears the burden of tracing the existence of the separate property within otherwise commingled property. *Peck v. Peck*, 96 Ohio App.3d 731, 734, 645 N.E.2d 1300 (12th Dist. 1994).

{¶ 30} Our examination of the record reveals appellant failed to meet this burden. He testified he had no idea which accounts he had deposited his settlement into, and that some funds were placed in joint accounts. T. 85. He further presented no evidence to show any personal property was purchased with separate funds.

{¶ 31} Having found no abuse of discretion, the second assignment of error is overruled.

III

{¶ 32} In his final assignment of error, appellant argues the trial court abused its discretion by finding appellee had not committed financial misconduct throughout the term of the marriage by withdrawing "over $100,000" from appellant's bank accounts." We disagree.

{¶ 33} R.C. 3105.171(E)(3) provides "[i]f a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." The burden of proving financial misconduct is on the complaining spouse.

{¶ 34} It is within the trial court's discretion to determine whether a spouse committed financial misconduct, subject to a review of whether the determination is against the manifest weight of the evidence. *Boggs v. Boggs*, 5th Dist. Delaware App. No. 07 CAF 02, 2008-Ohio-1411 ¶ 73, citing *Babka v. Babka*, 83 Ohio App.3d 428, 615 N.E.2d 247 (1992).

{¶ 35} In *Kilpatrick v. Kilpatrick* 5th Dist. Delaware No. 2011-Ohio-443, ¶ 30-32 we stated:

> Financial misconduct implies some type of wrongdoing such as interference with the other spouse's property rights. *Bucalo v. Bucalo*, 9th Dist. Medina App. No. 05CA0011-M, 2005-Ohio-6319. The burden of proving financial misconduct is on the complaining

party. *Gallo v. Gallo*, 2002-Ohio-2815, 8th Dist. Lake App. No. 2000-L-208.

In *Mikhail v. Mikhail*, 6th Dist. Lucas App. No. L-03-1195, 2005-Ohio-322, the Sixth District found that financial misconduct must be based on "wrongdoing." In describing the wrongdoing, the court stated "[t]ypically, the offending spouse * * * either profit[s] from the misconduct or intentionally defeat[s] the other spouse's distribution of marital assets." *Id.* at ¶ 28.

In *Eggeman v. Eggeman*, 3rd Dist. Auglaize App. No. 02-04-06, 2004-Ohio-6050, the Third Appellate District also found that "[b]efore a compensating award is made * * * there must be a clear showing that the offending spouse either profited from the alleged misconduct or intentionally defeated the other spouse's distribution of assets." *Id.* at ¶ 24. The court found while the husband did engage in financial misconduct, the distributive award to the wife was not warranted because the record failed to show the husband personally gained or profited from his misconduct or that the wife's interest was defeated. *Id.*

{¶ 36} Appellant presented no evidence to show appellee personally profited from withdraws made nor that she made withdraws in order to interfere with appellant's

distribution of assets. The withdraws were made over many years, and years before appellant filed for a divorce.

{¶ 37} Out of the claimed $100,000, appellant points to one specific withdraw by appellee of $42,000 from a certificate of deposit (CD). The withdraw was made four years before he filed for a divorce. Appellant testified the CD was in his name only, but appellee testified it was in both their names. Appellant produced no documentation to demonstrate it was in his name only. T. 19, 53.  He also testified that these funds were proceeds of his personal injury settlement, which was his separate property. However, he also testified that proceeds from the settlement were placed into accounts that both he and appellee had access to. Appellee testified that she withdrew $42,000 from the CD at appellant's direction as appellant had been gambling heavily and directed her to place the funds into an account he could not access. Appellee stated she then later used the funds to purchase a Chevy Cruze for appellant and a car for her daughter from a previous relationship. T. 19-20. Appellant testified he purchased the Cruze with lottery winnings, but produced no evidence of the same. T. 51-52.

{¶ 38} Appellant further testified that appellee made other withdrawals without his knowledge, but he could not remember which accounts appellee had access to nor could he definitively state how much money she allegedly took, when she took it, or what she did with the money. T. 52.

{¶ 39} We have reviewed the record and find the trial court's determination that appellee did not engage in financial misconduct is not against the manifest weight of the evidence. Appellant failed to produce evidence to demonstrate that appellee personally gained or profited from her activities, or that his interest was defeated.

{¶ 40} The final assignment of error is overruled.

{¶ 41} The judgment of the Knox County Court of Common Pleas Domestic Relations Court is affirmed.


By Wise, Earle, J.

Hoffman, P.J. and

Baldwin, J. concur.


EEW/rw